315-275 People of the State of Illinois, Appalachia by Colleen Griffin v. Peter A. Ventsias, Appellant by Jeffrey Thompson Good morning. May it please the Court. Counsel for the Prosecution. Good morning, Justices. I bring before you this morning what I would submit is a wonderfully twisted intellectual exercise initiated by a courtroom prosecutor who chose, instead of going and drawing up new information, he chose to use a count that was in a court file, as your Honors know, that was previously gone to trial and had resulted in a plea of, in a verdict of not guilty. He reinstated the Class II felony for purposes of facilitating a plea bargain and it is our submission that it is that particular aspect of what happened that day that brings it out of what I might say is fairly majorly unusual into what really, I think, works for this particular case. And it is submitted to the Court. We probably won't ever see another case like this one again, but we do have to unravel what happened in the courtroom in that January morning. Our points are fairly simple. The first is that we are submitting to the Court that on count one, double jeopardy attached when Judge Shainstead uttered the words that he accepted the plea of guilty. As your Honors know, jeopardy attaches in three instances in the law. Jeopardy attaches when the first witness is sworn in a bench trial, when the first panel is sworn in in a jury trial, and when the plea, when a plea of guilty is accepted by the Court. And I believe that what makes this particularly interesting in this case is the fact that that was done as a bargain for the benefit of the bargain of the defendant. Our points that we've raised in our brief are first that jeopardy attached and he should not have been tried on the count one. He definitely remains subject to sentencing on that count two that he pled guilty to, and I'm going to talk a little bit about remedies later on. We also submit to the Court that you cannot waive, withdraw that plea without certain admonishments that should have taken place on that second court date when everybody appeared and the plea was vacated. You'll notice in that instance the only words that the defendant uttered that morning was good morning, Judge. And we've cited some cases to the Court that indicate that if you don't do those proper admonishments, if you don't give him a chance to understand that, he was vacating a class two that he had subject himself to and reinstating a class X. And this individual had already done some time in prison on this particular case. So that's a second aspect of it. Regardless of whether there was a double jeopardy violation in this case or not, the second very serious question is the lack of admonishments in that regards. If your honors know the record, we made a motion for a bystander's report to try to figure out what was going on on that second day. The case, the particular motion was denied. I think the Court attempted to rectify the issue by making a record during my motion to dismiss. But I'll leave it to your good judgment whether that occurred or not. One of our other allegations is the acceptance of a plea. And this is usually something that you hear the state arguing over and over again. And that's something that's, I submit, running all through this case. You've got the defense making arguments that you ordinarily would have the state making. And the state making arguments that you have the defense making. That's possibly something to consider. But the acceptance of pleas waives all non-jurisdictional errors. It works for the state and it should work equally for the defense. The other interesting issue in this case, and we decided to raise it, is the fact of a public policy argument. And that is, should an individual who had been previously found not guilty to an offense, and this is a broad brush, should that individual later on, if he decides to do so, be able to go back before a court and given that there's no mental issue involved, that there's full admonishments involved, there's a factual basis maybe even a higher standard than a factual basis. Maybe a court needs to make a determination beyond a reasonable doubt that the evidence could convict this individual. But there is, I think, I would submit, an issue to be decided of whether a person who could come back in front of a court and say, you know, my trial didn't go the way I thought it should go and I want to take responsibility for what happened. Sounds kind of crazy to be making this argument, but for one bit of law that your honors know quite a bit about. And that is that we all know trials are not perfect. And we all know that we don't always get the perfect result with what happens in trials. With Jeopardy! attached to the predatory charge, because the defendant did not enter a plea of guilty to that charge, correct? That's correct, your honor. It was a plea bargain that involved the nalipraso, that particular charge in exchange for a plea to the count too. And that was, and what I think, if your honor, and I know you did read the transcript, that was a full admonishment. And I complimented Judge Shainstead. He fully admonished me to the point of indicating we could not, this charge could never be reinstated against you. So it really was a benefit of the bargain. And your honor, the case law does indicate the timing of the nalipraso appears to have some issue. But I would ask you to consider this, judge. Assume that the second court date never happened where everything was vacated. And assume for a second that the state said, you know what, judge, we, you've sentenced, assume you get six years on the class two. State then says, okay, judgment of convictions entered, you're sentenced to six years. Well, your honor, we want to proceed now on the class acts. The court would clearly have said at that point in time, no, you can't. This was the benefit of the bargain. The nalipraso occurred. Now, the record indicates in a court minute that the judgment of conviction is entered and the nalipraso is made. The timing of the nalipraso is something, frankly, I learned through the litigation of this case. The timing of the nalipraso is important. If you nalipraso before acceptance of the plea, as the case indicates, you may preserve some rights later on. Although, judge, I don't think it works if you're bargaining for it. Well, you know, how does the Caprari case, you know, the people versus Caprari fit into all this? Because in Caprari, the double jeopardy didn't bar a subsequent trial where a plea of guilty to the charge was vacated and then the agreed sentence did not comply with statutory, because the agreed sentence didn't comply with statutory guidelines, so that did not bar the subsequent prosecution. And that's even if you're not dealing with, you know, even if the jeopardy had attached, you know, to the predatory charge. Caprari, judge, I distinguish Caprari in a couple different ways. The first is the wonderful litany between Judge Holt and the defendant where he's talking about, oh, so you want your trial, and just a wonderful litany kind of reminded me of Judge Bastilli. However, judge, in Caprari, and for the part most, all of the cases that address jeopardy, your honor, the jeopardy issue kind of sneaks up on them. What makes this case so unique is the jeopardy was there from the beginning to the end. It was out there. It was never something that a lawyer later on in an office had to sit back and noodle it and say, all right, there's a double jeopardy issue that involves this plea that kind of snuck up on the parties. It didn't in this case. Everybody knew exactly what was happening in this particular instance. We were pleading to a class two, or attorney Dan Kennedy was representing the defendant at the time. He was pleading to a class two in exchange for the dismissal of a class X. And when the court, and it really does kind of boil down to the importance of the words we utter in court. And in this particular case, when the acceptance of the plea occurred, and judgment of conviction entered, and the nolle pros was granted on the class X felony, it doesn't happen all the time. But in this particular instance, there were consequences in that courtroom on that day. Now, I will say, your honor, that the consequences. I'm sorry, what was the timing like? Here's how it kind of went down, where the prosecutor in the beginning of the plea outlines for Judge Hingstead what's going to happen. We're going to nolle pros this, we're going to do that. He then begins his proper admonishments, beginning with the double jeopardy issue and following all the way through. The judge then dictates the minute order indicating judgment. And he does utter on the record, the plea is accepted. The nolle pros language, your honor, frankly, does not appear in the transcript of that day. It appears in the court's minutes. And to be perfectly honest with you, that's where it's located. It's in the minutes that the nolle pros occurred. But judge, the timing might not be as important. The case law kind of gives us some guidance in this case, but I don't think it gets me out. In this particular instance, I think it's the benefit of the bargain that really dictates whether double jeopardy attached or not. We're trying to make this a very different situation than it really, I submit to the court, is. It's because double jeopardy is a personal right. And that's kind of what we're really left with deciding in this case. Does the state have the right to say, you know what, we're smarter than you, Mr. Defendant. You can't ever waive your double jeopardy rights upon a judgment of acquittal. And we're going to protect you because we know it's not in your good interest to do that. I submit the opposite. I'm sorry, Justice. I'm obviously missing something here. The first time that Mr. Venceas was in court, this was a trial, right? Yes. And he was acquitted of count one. Of count two, Judge, the class two. I'm sorry, acquitted of count two. Guilty of the one. Right, okay. So regardless of his ability or inability to waive his double jeopardy, does the state have the right to come against him again on something that he's been acquitted of? Only with his permission to do so, Your Honor. The state. I would say, Judge, I don't think you're – honestly, Your Honor, I don't think you're – it's a very unusual situation, but I don't think you're missing one thing on this. The question is, could they charge him or try him for that class two that he was acquitted for? No, because he could use it as a bar. He could also use that right to be waived if, in his mind, there was a benefit to his waiving it, which we waive all of our constitutional rights in plea bargains all the time. And in this particular instance, the defendant held those cards. If the state made an offer to allow him to plead to the class two that he had previously found not guilty of in exchange for a dismissal of the class X felony, it certainly was in his benefit to do so. Under those instances – I'm sorry, Judge – under those instances, I believe any defendant would certainly waive his double jeopardy rights to that class two. It's in his benefit to do so. But the issue of double jeopardy goes to the integrity of the judicial system. It does. I don't know – I personally would question whether a defendant has the right to waive something that's so integral to our entire perception of justice in this country. I appreciate it, Your Honor, but if we look at what we can waive, look at all of the rights we can waive, there are individuals that can waive the right to challenge being sentenced to death. You can waive your right to an attorney. You can waive your right to a speedy trial. You can waive almost all of the rights, the protections that we get from our Constitution. But that waiver, Your Honor, I submit has to be – it has to be knowing. It has to be understanding. And if it's in your benefit to do so, why – I suggest to the court, why would a citizen not have the right to waive – even if it's the most integral protection we have in the system. But if the defendant knowingly and intelligently and understandingly decides it's in my interest to waive this right, I don't see the harm to society as long as it's properly admonished. As a follow-up to the judge's question, how does that fit in with a case like the Supreme Court's case from the late 80s where they said a defendant could plead guilty and therefore waive double jeopardy, although they couldn't do that in a situation where the state couldn't even charge and prosecute the case because of double jeopardy grounds. So they said there was an exception. That they could – I'm sorry, Your Honor, I'm not familiar with – It's a Broce case, or B-R-O-C-E. Broce. That was one of the cases that I think we cited in our brief. I mean, they say one thing and then they say the other thing. And I'm following up on the judge's question because that's – I mean, it appears to me they start saying one thing and then they say the opposite thing. They kind of do, Judge. And then there's also the People v. Decola where the Supreme Court talks about the right being a personal right of the defendant. And, you know, it's his right should he choose to waive it. In this instance, the thing that caught our eye is the fact that there was this benefit, this bargain that the defendant got in exchange for that waiver. And then we took a step back from there and said, why not? Why – what is the harm to society if a well-informed defendant decides to do this? I'm talking about in general terms. Although, Your Honor, in this particular case, as I've said before, all of the other cases that we're addressing here, it's not – the double jeopardy issue kind of snuck up on everybody. That's not the case in this particular instance. It was out there from the very beginning all the way through. The admonishments were complete. He knew what he was doing. He was waiving the right because it was in his benefit to do so. The Class X felony was dismissed. They did their part. He pled guilty. He did his part to avoid a trial. And matters should have progressed from that point forward. There is another important aspect of the case. I saw the plea agreement in this thing that was terminated by the court, the earlier plea agreement. That's correct, Judge. And McGrath is the case that we cited in those regards. So when the plea agreement was terminated, did that terminate the jeopardy attachment? Your Honor, I think it would have if he had been admonished that that was what he wanted to do. Because that would seem to be the lesson from Cabrera. I can't see where I'm coming from on that. Your Honor, we might not even be here today if that second day hadn't gone down the way it did. If Mr. Venceance had been admonished, you know, you understand what we're doing today. Even if he just said, I understand what's happening, maybe not that if he agreed with it or not. If he agreed with it, we're done. But if he says he understands. It's not a lot of law on how clear it has to be. It's just whether something attached or not. Correct. And, you know, Your Honor, I would suggest. You see where I'm coming from on the Cabrera thing. I sure do. Because on the Cabrera, they seem to indicate that, you know, if you vacate something, if it's terminated. So then you, therefore, wouldn't have jeopardy attached. Because it's terminated. The thing is vacated. We cited the case law in the withdrawal of the plea. And McGrath and the other cases stand for the proposition that you've got to let the guy know what's happening. You've got to admonish him as to what's going on. And the case law goes so far as to say if you don't admonish him, you can't reinstate. That's what McGrath stands for. And that's kind of, Your Honor, the second level of scrutiny I'm asking the court to take. In this particular case. Absolutely. Thank you. Number one is to examine the double jeopardy issue and whether an individual can properly waive it. Maybe in a general context. But maybe there's a much more pinpointed way to look at this case. And that involves the lack of the admonishments on the day the plea was reinstated. Maybe a remedy in this case is to send it back down for an inquiry of the defendant. To see whether that was something he wanted to do on that particular day. I think you would obviously have to give us some direction so we wouldn't come back up again if he decided to say no or yes for that matter. But that's another aspect of this case, Judge, which I submit needs scrutiny. And that is why was there no admonishments on that second day? The state seems to say, well, he didn't need it. He didn't need to do it. That's not what McGrath says. And, again, Your Honor, that's not kind of the way we do things. If we're going to bring an individual into court, he should at least know that, hey, we are reinstating a mandatory prison offense against you today. We're taking away that plea you did on the class two and what the implications of that are. Do you understand or are you in agreement with this? And in the absence of those admonishments, Judge, I think we're into the territory of McGrath, regardless of the issue of double jeopardy. Now, the defendant didn't plea to the predatory charge. No, he actually went to trial again and was found guilty again. And then we got the case on appeal and started digging for it. Because in a lot of those cases, there's a plea situation where you've got jeopardy causing a problem. And I submit to the court, this is the third time I'm saying it, and I apologize for that, but in almost all of those cases, jeopardy sneaks up. And a good lawyer finds it in a transcript. In this case, and this is what makes it completely different, it was on the table from the beginning. It was admonished about. Everybody knew what they were doing. And things went forward in that regard. I'm sorry. I'm going to ask the second time. I'm sorry. I didn't answer your first question. No, you answered it. I just want to follow up on it because I'm still having a problem. You talked about the other things that a defendant can waive, the other constitutional rights that he can waive. And I know that those cases are there. The problem that I have in this instance with the defendant waiving is that he can arguably, you're arguing, waive his right against double jeopardy. Waive his right to protection of double jeopardy. Can he waive the state's prohibition to charge him again? I don't know that he can do that. I would say. And I think that may be what Brosey is saying, is that if the state is prohibited from recharging him, he can't waive his double jeopardy. Your Honor, Brosey uses the language about hailing an individual into court. The Constitution bars the state from hailing them into court. And I would submit that this particular case is different because we had the two charges going on. He had already been hailed into court. The question, to answer your question directly, and I sure hope I do, and that is that could the defendant have stood up and said, no, I don't want that class 2. The answer to your question is absolutely yes. Just as he would have had the right, if a plea bargain was created, to bring that class 2 back and say, I have no problem pleading guilty to that. I understand they could never, ever reinstate this charge against me. I understand that was found not guilty. It's to my benefit. I want to do it. So I submit to the court, it's a personal right of the defendant. It's so important to every one of us. And I completely understand your Honor's position. But it's still, your Honor, it's a right bestowed upon the citizen. And if the citizen's good, knowingly, voluntarily, well-informed judgment, he decides to waive it. For his benefit, he should be allowed to do that. But it's foundational in our system that the state cannot recharge him if he's been acquitted. Yes. So you're suggesting that not only can he waive his right, but he can also waive the prohibition against the state. I would submit, your Honor, that the prosecutor in that particular room on that day, if the defendant had chosen to bar him from doing it, it was the defendant's bar, it was the defendant's shield against the state. And he could hold it up or he could put it down. And in this instance, you had a prosecutor who, pursuant to a plea agreement, was putting it back on. Again, your Honor, I apologize if I'm not answering, but I hung up on it. It's the defendant's right. You're answering. We just have no difference. Okay. In the words of my father, oh, that's why they make apple pie and cherry pie, your Honor. With barring any further questions, I'll say. Thank you, Mr. Konczak. Ms. Griffin. May it please the court, counsel. I'd like to start out by what happened on January 4th of 2012 when the state and the defendant agreed to allow the defendant to plead guilty to count two, which he had previously been acquitted of. It was at that time that the Supreme Court admonishments are given. Rule 605, the defendant talks about the Walker case. Rule 605 specifically says that those admonishments about if you pursue a motion to withdraw your guilty plea, they're given at the time of sentencing. Nobody's trying to say that admonishments weren't given at the time of the sentencing and at the time of the invalid guilty plea. There's nothing, and that moves into after that, I believe the trial judge, the state attorney, and defense counsel realized that they simply could not do this. They could not plead him guilty to a charge that he had been previously acquitted of. That's why the state made the motion to reinstate the charge. And again, what happened thereafter when the Class X was reinstated and the guilty plea was vacated to the count two, the defendant never objected to that procedure, realizing again that this was something that basically had to be done by the court. Readmonishing the defendants to Supreme Court Rule 605 simply wouldn't have been effective. This was the trial judge vacating an invalid guilty plea. Admonishments are given to inform the defendant at the time of the guilty plea as to what the consequences of his own actions might be if he decides to withdraw his guilty plea later. The defendant simply had no voice in whether to withdraw his guilty plea. It's the state's position that it simply had to be done. And I know counsel disagrees with the state's footnote one in their brief, but I believe that at the time the state moved to reinstate the Class X, the state specifically indicated they made the motion and asked the court to vacate the plea and allow the defendant to plead to the desired Class II felony, keeping the same sentencing date in the future. I believe that that statement that was made in the motion and on the record shows that at that time the state was going to lower the Class X to a Class II and basically give him the same deal as he was going to get, but on a valid count of an indictment. The defendant, however, chose not to do that and chose to proceed to trial again on the Class X, and it was only after he lost again at trial that all of a sudden he started raising double jeopardy claims and his other claims regarding this. So I think that that's important to remember here. Well, this is a case that's not totally clear, though. It's not totally clear, but I certainly believe that the statements that were made on the record indicate that that was what the state was willing to do. I believe at one point the defense attorney at the time stated that the defendant wanted to go forward on the Class X, and I believe that that's basically all that the record actually shows. But I think that the motion saying allow him to plead to the desired Class II indicates that that certainly was what the state was intending. I know the defendant has argued that because this was a negotiated plea, when the state moved to Nalipras, the Class X, that basically was the same as an acquittal of that charge because jeopardy had attached to the Count II. But I believe that the Cabrera case and the citation to People v. McCoochee, and I believe it is from 1977, makes it clear that jeopardy only attaches to the charge that the defendant pleads guilty to at that time. And I know that they talk about timing. If the Nalipras is made before jeopardy attaches, it's okay, and if it's made after jeopardy attaches, it's not okay. But I think that those statements are kind of taken out of context. I believe that that's more of the situation where, say, there's a five-count indictment, the jury's impaneled, in the middle of the trial, the defendant decides to plead guilty to one of those counts, and the state dismisses charges at that time after jeopardy has actually attached. Then the state cannot re-prosecute on those charges. You have to admit there's some unclear statements. I believe it is inconsistent, but the McCoochean case specifically says, jeopardy attaches only at the time a guilty plea is accepted by the court, and logic dictates that jeopardy would attach only to the crime pleaded to, since there has been no other finding of any sort. And I believe that Cabrera also supports the state's position. But you've got McCoochean, Watson, Danielson, Carrera. Correct. That kind of statement. But again, there's also other unclear statements from the Supreme Court. I believe that that is true. And so you're saying the reason for the unclear statements are because of the unique circumstances in those individual cases. Yes. What was happening where jeopardy had attached for some other reason. Right. That was your argument. And I think Bellmeyer makes clear when jeopardy attaches, at the guilty plea when the plea is accepted by the court, if the situation would apply to this case, we did cite on the record at page 881 where the state sets forth, and we're going to enter the plea today, it involves a plea to count two, so I would be making a motion to reinstate, then the prosecutor says, and then I would be making a motion to not only prosecute, count one, and it was thereafter that the court actually accepted the plea. So if this situation does apply, it does not apply to this case. Is that how you put Brosey in line or Brokey in line with this stuff? Because they say that a defendant can waive double jeopardy and plead guilty, but you can't do it when jeopardy is already attached. So you're saying in these other cases jeopardy either didn't attach, or it's only the case where they have this language, it's when jeopardy attached for some other reasons. I think Brosey actually goes more to the argument that the defendant could actually have waived the double jeopardy claim as to count two, and I think it's clear that the case law is that where there's been a prior acquittal, the state cannot haul a defendant into court or hail a defendant into court on that charge. If the state can't prosecute the charge because jeopardy is attached, because of an acquittal, and that is the exception to the general rule that a defendant can, in fact, in instances, waive his double jeopardy claim, and I think what Brosey makes clear is that these two exceptions, one which was applicable here where it's based on a prior acquittal, it can't be done. The state cannot bring the defendant into court. If the state can't bring the defendant into court and cannot have a valid indictment or charge on which to base the guilty plea, there can be no guilty plea on an invalid charge. But in this case, it was a nollie cross in terms of the prior guilty plea about the other matter. In this case, the defendant wants to be able to plead guilty to the count two, which he has been previously acquitted of, and I think he's making two separate arguments, that double jeopardy attached to count one, so we couldn't re-prosecute on that count, and or that he could waive, if he could waive the double jeopardy claim as to count two, then he's probably right about count one. However, this was an invalid guilty plea as to count two, and therefore, once all the parties realized that, reinstatement as to count one was entirely proper. I believe it's jurisdictional, and I think that some of the case law is unclear, although in Illinois, it doesn't appear that the cases find this jurisdictional. It seems to be an exception to the rule that only non-jurisdictional matters can be waived. I know in one of the cases we cited in our brief, it's a federal 8th district case, I believe, that court, in fact, said that a re-prosecution in the face of the MENA case, which is the M-E-N-N-A case, would be a void prosecution, it would be a jurisdictional issue. But I think what some of the Illinois Supreme Court cases, or Illinois Appellate Court cases, have stated that it's not jurisdictional, even though the defendant can't waive it. It's kind of a void versus voidable situation. But at a minimum, I think it works to the same effect, that either it's an exception to the rule that a guilty plea waives all non-jurisdictional defects, or it is a jurisdictional defect, in such that for waiver purposes, the result would be the same. If there's no questions, I believe that I've covered everything I wanted to cover regarding this issue, and we would just ask that this court affirm the trial court in this case. Thank you. Thank you very much. Mr. Townsend, you're up. In our brief, Your Honor, the Brochi case does kind of back us into this. I realize why you're focusing on that case. It talks about three instances where a plea of guilty and a subsequent adjudication of guilt precludes a later double jeopardy attack. And that plea is entered as a general plea as distinguished from a plea bargain. The double jeopardy violation is apparent from the record, and there is nothing in the record to indicate a waiver of the double jeopardy violation. In this particular instance, Your Honor, we have all of the ingredients that we submit would allow us to go forward and to do this. The jurisdictional... If I could just back in for a second. The idea of the defendant not wanting to go forward in that particular instance is just not part of the record in this case, and I am going to ask the court to disregard what's not contained in the record. We, on the defendant's behalf, filed a motion for that bystander's report to try to get as much information before this court as we could, and frankly, I respectfully do object to consideration of anything that was not included in the record. The jurisdictional charge is interesting, though, from the state's perspective. Again, we have the sides kind of arguing what ordinarily would be the other way. The state's really left arguing, well, jurisdictionally, we could not do what we did that day in court, and that's what makes it interesting. And then waiver comes into interest, whether the state may have waived the ability to make that objection by allowing the context of the court, the plea to go the way that it did in that instance. Judge, I wanted to bring one last thing up, and that is something I should have argued last time, and that is about the fundamental rights of things and how important this double jeopardy right is, and I suggest to the court to consider Alford. I mean, there's an Alford plea where an individual stands before the court and says, you know what, I don't want to stand before you and say I did this crime, but I'm going to suggest myself to the jurisdiction of the court and the punishments of the court because it's in my favor to do so. Alford maybe provides us some guidance in this regards to whether we're getting to that fundamental protection I know Your Honor holds so dear and is thinking about in this particular instance. Alford, again, is a plea. Most of the cases that we're talking about are pleas, and the defendant has the right to ask the court to withdraw a plea. This is not a plea. This is an acquittal. The state is in a different position with regard to that. The defendant, if he's pled guilty, we allow him to withdraw his plea, which is in essence waiving his double jeopardy protection. This is an acquittal. This is not a plea. Completely understood, Judge, and it would make a world of difference if you were to find that the right is something other than a personal right of the citizen. If it's a personal right that the citizen holds against the state, then he would have the right to waive it if he feels it's in his benefit to do so. Okay, but the state cannot have subject matter jurisdiction before a court to bring a charge against a defendant that he's already been acquitted of. Your Honor, maybe in your mind I might be splitting your hair, but the difference that I see there is somebody who is not already before the court on other charges arising out of the same transaction and occurrence. Well, in all honesty, Judge, you've got the two counts going on here. I know what you're saying. The state should never have been able to do what they did in that instance, so now let's vacate, let's basically give the state the benefit of their errors in refiling that case and admonishing the defendant that they could never do that. To a certain extent, they're getting the benefit of an error that they committed if we're to find it to be that, and certainly that's what the record bears out. They're getting somewhat of a benefit for it. And the second part of the argument kicks in then, Judge. Why didn't we admonish Mr. Venzius on that second court date when we vacated everything? I think I would submit, Your Honor, the admonishment becomes a very important part of the case. The idea of explaining to somebody, hey, this is what's happening to you, because that objection, had he had one at that moment, we could have been arguing this a long time ago. And I certainly don't want to downplay the importance of admonishments. I know, I know. But I think the fundamental question here is still whether the state has the ability to do what you want the state to do. And frankly, I'm not sure that you want to be opening what looks like a potential Pandora's box. We raised a public policy argument, and it does tend to be, especially since it's being raised by the defendant, and I argued it before Judge Shane, I mentioned O.J. Simpson. O.J. walks into the Los Angeles Police Department and says, you know, I know what I did. My trial did not result in the matter. It's been eating away at me, and I can't take it anymore. And I want to get myself, I want to be punished in accordance with what the law should punish me for what I did. And if a court, and that's why I mentioned earlier, Judge, the standard of maybe a court needs to find the evidence that's beyond a reasonable doubt for a person to waive double jeopardy. But whether it's for a plea bargain benefit or whether it's for a benefit of heart and soul of a defendant that feels that the trial, and we know we don't have perfect trials, but the benefit of a defendant psychologically to go in and be punished for what he did, I don't see the reason why you wouldn't be able to follow. You know, following what the justice said, it is typically, it's the motion of the defendant to vacate a guilty plea that we are talking about the admonishments. And that's where you normally talk about it. That's not our situation. We've got a wholly different situation. We have good morning, Your Honor, that day, and that's all we have on the call, and that's a big part of it. But usually the requirement of the admonishments deal when the defendant is making the motion to vacate the guilty plea. Right. You know, as sort of a collateral aside, usually a motion to dismiss the charge, I think the statute requires that that be done prior to trial. Of course... The research that we found, Your Honor... That's a statute. The statute says... Nobody's talked about this, and we're talking about constitutional claims, but this is sort of a funny little creature, you know, a statutory creature in this case, because the very motion that we're talking about, you know, the motion to dismiss the charge, was not brought prior to a trial, which is, that's what the statute says is required. And, you know, we've got all this arising from that kind of motion that wasn't brought pursuant to the statutory language. I think there's some case law... I already submit, Your Honor, there is some case law that says double jeopardy can be raised at any time. But I don't have that handy for you right now, but I think we did argue it earlier. You know, I'm not making, you know, a lot of questions about it, but it's sort of another sort of unusual twist in this whole case. I appreciate the Justice's time on this very interesting case. Thank you. If there's any further questions... Good morning to the court. Thank you, Mr. Tomczak. Thank you both for your argument today. We will take this matter under advisement. We'll get back to the written disposition within a short bit. We'll now take a short recess for panel discussion.